UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

**CIVIL ACTION NO. 16-44-DLB**

**GREGORY C. HALCOMB**                                                                     **PLAINTIFF**

vs.                     **MEMORANDUM OPINION AND ORDER**

**NANCY A. BERRYHILL, Acting
Commissioner of Social Security**                                    **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, and for the reasons set forth herein, hereby affirms the decision of the Commissioner.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On September 19, 2011, Plaintiff Gregory C. Halcomb applied for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) payments, alleging disability beginning on February 14, 2011. (Tr. 273-178, 279-282). Plaintiff's application was denied initially and again on reconsideration. (Tr. 115-124, 125-138). At Plaintiff's request, an administrative hearing was conducted on May 13, 2013, before Administrative Law Judge ("ALJ") Roger L. Reynolds. (Tr. 87-114). On June 6, 2013, ALJ Reynolds issued an unfavorable decision, finding that Plaintiff was not entitled to disability benefits. (Tr. 147-57). On August 4, 2014, at Plaintiff's request, the Appeals Council remanded Plaintiff's case back to the ALJ, with instructions to remedy several errors. (Tr. 163-167).

1

In accordance with the Appeals Council's Order, another administrative hearing was held on March 9, 2015. (Tr. 55-86). On March 24, 2015 ALJ Reynolds issued another unfavorable decision, finding that Plaintiff was not entitled to benefits. (Tr. 32-48). This decision became final when the Appeals Council denied Plaintiff's request for review on March 17, 2016. (Tr. 1-7). Plaintiff filed the instant action on April 8, 2016. (Doc. # 1). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 13 and 15).

## II.  DISCUSSION

### A.  *Overview of the Process*

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the court is required to affirm the Commissioner's decision, as long as it is supported by substantial evidence, even if it might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite

conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

To determine disability, the ALJ conducts a five-step analysis. "If, at any step during the process, it is determined that the claimant is or is not disabled, the process is terminated." *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 928-29 (6th Cir. 2007). Step One considers whether the claimant can still perform substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe;" Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform her past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity." *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B. *The ALJ's Determination*

ALJ Reynolds began the sequential evaluation by determining at Step One that the Plaintiff has not engaged in substantial gainful activity since February 14, 2011, the alleged onset date. (Tr. 37). At Step Two, the ALJ found that the Plaintiff had five "severe" impairments: (1) chronic neck pain secondary to degenerative disc disease of the cervical spine, (2) left shoulder supraspinatus tendinopathy with intrasubstance tear and osteoarthritis of the AC Joint, (3) left carpal tunnel syndrome, (4) coal worker's pneumoconiosis, and (5) migraine headaches. *Id.*

At Step Three, the ALJ found that the Plaintiff does not have an impairment, or combination of impairments, listed in or medically equal to an impairment in the Listings of Impairments. (Tr. 37-39 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1)). In doing so, the ALJ determined that the Plaintiff's left shoulder osteoarthritis did not satisfy the criteria of Listing 1.02(B). (Tr. 38). The ALJ further found that Plaintiff's chronic neck pain did not meet or equal the requirements of Listing 1.04. *Id.* The ALJ also found that Plaintiff's carpal tunnel syndrome did not meet or medically equal any of the listings in Section 11.00, including Listing 11.14. *Id.* With respect to the Plaintiff's coal worker's pneumoconiosis, the ALJ determined that the medical evidence did not satisfy the criteria in Listing 3.02 or Listing 3.03. (Tr. 38-39). And lastly, the ALJ found that Plaintiff's migraine headaches, which are not specifically addressed in a listing, failed to meet the criteria of Listing 11.03, which "most closely matches the symptoms of migraines." (Tr. 39).

At Step Four, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform light work activity with the additional following restrictions:

> [T]he claimant can lift and carry up to twenty pounds occasionally with the right dominant hand/arm and ten pounds frequently; can lift and carry [ten] pounds occasionally and less than ten pounds frequently with the left non-dominant hand/arm; occasional use of the left arm for front, lateral, and overhead reaching; frequent use of the left non-dominant hand for grasping, pinching, fingering, or feeling; no work requiring frequent turning of the head; no climbing of ropes, ladders, or scaffolds; occasional climbing of stairs or ramps; no exposure to concentrated dust, gases, smoke, fumes, temperature extremes, concentrated vibration or vibrating hand tools, or industrial hazards; and no aerobic activities such as running or jumping.

(Tr. 39). Based upon this RFC, the ALJ determined that the Plaintiff was unable to perform his past relevant work as a coal miner. (Tr. 46).

4

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step Five, the ALJ found that there are a significant number of jobs in the economy that Plaintiff could perform. (Tr. 47-48). The ALJ based this conclusion on testimony from a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. *Id.* The VE testified that a hypothetical individual with Plaintiff's vocation profile and RFC could perform occupations such as: bench assembly; cashier; and weighing, measuring, and checking jobs. (Tr. 47). Therefore, the ALJ concluded that Plaintiff is not under a "disability," as defined by the Social Security Act. (Tr. 48).

### C. *Analysis of Plaintiff's Arguments*

The Plaintiff advances two arguments on appeal. (Doc. # 13). First, the Plaintiff complains that the ALJ failed to give controlling weight to the opinions of his treating physician. (Doc. # 13-1 at 14-17). In addition, the Plaintiff broadly argues that the ALJ's conclusion that he is not disabled is not supported by substantial evidence. *Id.* at 17-18.

### 1. **The ALJ's gave "good reasons" for rejecting the opinion of Plaintiff's treating physician.**

A treating physician's opinion as to the nature and severity of a claimant's condition is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). Even if the opinion is not entitled to "controlling weight," there remains a presumption, albeit a rebuttable one, "that the opinion of a treating physician is entitled to great deference." *Id.* In determining how much deference to give to the treating physician's opinion, the ALJ must consider a number of factors, including "the length,

5

frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Id.*

The ALJ must also "provide 'good reasons' for discounting treating physicians' opinions." *Id.* Good reasons are those "that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This rule ensures that claimants understand the disposition of their case, particularly when their own physician deems them disabled, and also permits meaningful appellate review of the ALJ's decision. *Id.* Thus, even if the ALJ's decision to disregard the treating physician's opinion is supported by the record, the decision may still be reversed if adequate explanation is missing. *Id.*

Plaintiff contends that the ALJ failed to give adequate reasons for discounting the opinion of his treating physician, Dr. Breeding. Dr. Breeding opined that the Plaintiff could not stand and/or walk for more than four hours in an eight-hour day, and could only walk for 30 minutes without interruption. (Tr. 688-690). Similarly, Dr. Breeding found that the Plaintiff could only sit for two hours in an eight-hour day, and could only sit for 15 minutes at a time. *Id.* Dr. Breeding also concluded that the Plaintiff should be limited to lifting no more than 18-25 pounds and would have problems performing multiple postural positions, and would also have difficulty with reaching, pushing, and pulling. *Id.*

Contrary to Plaintiff's argument, the ALJ provided "good reasons" for rejecting each of Dr. Breeding's opinions. These "good reasons" are supported by substantial evidence in the record. Although the ALJ acknowledged that the Plaintiff had been treated by Dr. Breeding since at least February 2011 (Tr. 40), the ALJ explained that she gave Dr.

6

Breeding's opinions "little weight" because they "were not supported by the medical evidence." (Tr. 45). More specifically, the ALJ noted that "Dr. Breeding's opinions regarding sitting and standing limitations" were inconsistent with the medical evidence, which "shows that the claimant has a normal gait and is able to rise from seated positions." *Id.* In rejecting these opinions, and the resulting limitations, the ALJ relied heavily on Dr. Muffly's opinions and treatment notes, which demonstrated that "the claimant did not limp and had good balance" and "could fully squat and rise." *Id.*

With respect to "Dr. Breeding's opinions regarding the claimant's ability to lift objects," the ALJ found that the "medical evidence indicates that the claimant could lift more frequently" than less than one hour per day. (Tr. 45-46). As support for partially rejecting Dr. Breeding's opinion regarding the Plaintiff's ability to lift, the ALJ relied on Dr. Muffly's treatment notes "that the claimant demonstrated normal strength in all muscle groups except in the left biceps and left rotator cuffs" and even so, those "muscles were only reduced to 5-/5 strength." (Tr. 46). Accordingly, the ALJ reasoned that the Plaintiff "would be able to perform the requirements of light work for a longer period than expressed by Dr. Breeding." *Id.*

In regards to Dr. Breeding's opinions concerning the Plaintiff's postural limitations, the ALJ determined that "the medical evidence shows that the claimant has limitations caused by neck and shoulder problems." *Id.* However, the ALJ concluded that Dr. Gregg's opinions were entitled to greater weight than Dr. Breeding's "because they better reflected the fact that the claimant had retained nearly normal muscle strength and only had limitations in range of motion in the neck and left shoulder." *Id.*

7

In addition to finding that Dr. Breeding's opinions were inconsistent with the other medical evidence in the record, throughout his decision the ALJ highlighted inconsistencies between Dr. Breeding's opinions and his own treatment records. For example, Dr. Breeding noted in March 2013 that the Plaintiff "demonstrated normal range of motion, muscle strength, and stability in all extremities with no pain on inspection." (Tr. 42 (citing "Exhibit 23F")). Similarly, in September 2013, Dr. Breeding diagnosed the Plaintiff with cervicalgia, while noting that he "exhibited no sensory loss" and that her "reflexes were preserved." *Id.* (citing "Exhibit 27F"). These findings are inconsistent with Dr. Breeding's opinion regarding sitting and standing limitations, as well as the lifting and postural limitations he recommended. Thus, "the ALJ properly declined to accord [the treating physician's] opinion 'controlling weight' because there was substantial contrary evidence in the record." *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1000 (6th Cir. 2011).

The ALJ's decision also demonstrates that Dr. Breeding's assessment, and the Plaintiff's allegations of pain and limitations, were at odds with Plaintiff's activities of daily living. Specifically, the ALJ noted that the Plaintiff "testified that he retains the ability to drive a car," which "requires an individual to turn his … head on a regular basis." (Tr. 46). Therefore, the ALJ's decision not to incorporate Dr. Breeding's postural limitations caused by neck and shoulder problems was supported by the evidence. *See e.g., Helm*, 405 F. App'x at 1002 ("[T]he ALJ discounted [the treating doctor's] assessment in part because Helm 'continues to perform significant activities around the house…'").

Based on the foregoing, the Court finds that Dr. Breeding's opinion was not entitled to controlling weight, and further finds that the ALJ gave good reasons for accepting and

8

relying on Dr. Muffly's and Dr. Gregg's opinions over those of Dr. Breeding. *See Durrette v. Comm'r of Soc. Sec.*, No. 94-3734, 1995 WL 478723, at *3-4 (6th Cir. 1995) (concluding that it was proper for the ALJ to give greater weight to the reviewing doctors' opinions because the treating physician's opinion was conclusory, not supported by objective evidence, and controverted by other medical opinion testimony). Accordingly, the ALJ did not err in weighing the medical opinion evidence.

### 2. The ALJ's RFC assessment is supported by substantial evidence.

A RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Soc. Sec. Rul. 96-8p, 61 Fed. Reg. 34474, 34475 (Jul. 2, 1996). Stated another way, the RFC is "what an individual can still do despite his or her limitations." *Id.* "In assessing the total limiting effects of [the claimant's] impairment(s) and any related symptoms, [the ALJ] will consider all of the medical and nonmedical evidence" in the record. 20 C.F.R. § 404.1545(e). The ALJ is only required to incorporate those limitations that he finds credible in the RFC assessment. *Irvin v. Social Sec. Admin.*, 573 F. App'x 498, 502 (6th Cir. 2014) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

The Plaintiff broadly alleges that the ALJ erred by failing to find him disabled since substantial evidence supports his disability and that the "combined effects" of his impairments "reflect that he could not perform a wide range of even sedentary work on a regular and sustained basis." (Doc. # 13-1 at 18). Of course, it does not matter if the substantial evidence does support the Plaintiff's disability, so long as it also supports a

9

finding of "not disabled." *Her*, 203 F.3d at 389-90 (holding that "[e]ven if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the decision reached") (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). As a result, it does not matter if Plaintiff, or even this Court, believes substantial evidence supports a different disability determination. All that is required of the ALJ is that he render a decision that is supported by substantial evidence. The ALJ has done so here.

At Step Four of the analysis, the ALJ carefully reviewed the record and found that the Plaintiff was capable of doing light work with the limitations specified. (Tr. 39). The ALJ carefully went through each of Plaintiff's impairments and described why they were not disabling. (Tr. 37-46). The ALJ detailed why non-treating sources' limitations were incorporated instead of Plaintiff's treating physician's, considered the objective medical evidence, and properly discounted Plaintiff's subjective symptoms to the extent that they lacked credibility. Because the ALJ incorporated the limitations that he found credible in the RFC and properly weighed the medical opinion testimony, there is no error. Accordingly, substantial evidence supports the ALJ's determination that the Plaintiff was not disabled.

## III. CONCLUSION

For the reasons stated herein, the Court concludes that the ALJ's finding that Plaintiff was not disabled for purposes of the Social Security Act was supported by substantial evidence. Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff Gregory C. Halcomb's Motion for Summary Judgment (Doc. # 13) is hereby **DENIED**;

(3) Defendant Commissioner's Motion for Summary Judgment (Doc. # 15) is hereby **GRANTED**; and

(4) A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 1st day of May, 2017.

Signed By:
*David L. Bunning* DB
United States District Judge

K:\DATA\SocialSecurity\MOOs\Pikeville\16-44 Halcomb MOO.docx